**Elroy G. NEWTON, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Sec. of HEW, Defendant.**

**No. 76–826C(B).**

United States District Court,
E. D. Missouri, E. D.

June 28, 1979.

**620**

Harry J. Nichols, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

REGAN, District Judge.

This matter is before the Court upon the cross-motions of the parties for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure.

Plaintiff Elroy G. Newton commenced this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the defendant Secretary of Health, Education, and Welfare denying disability insurance benefits. Judicial review of this administrative final decision is limited to whether or not it is supported by substantial evidence in the record as a whole and to

whether or not it comports with the applicable rules of law. 42 U.S.C. § 405(g); *Russell v. Secretary of Health, Education, and Welfare*, 540 F.2d 353, 356–57 (8th Cir. 1976).

Plaintiff initially applied for benefits on January 31, 1974. That claim was initially denied and plaintiff did not file a request for reconsideration. Thus, this application was abandoned by him. He renewed his application on January 18, 1975 alleging that he became disabled on December 13, 1973 on account of a back injury, a lumbosacral sprain involving a severely impaired ability to bend and to lift. After consideration and reconsideration the application was denied. On November 20, 1975 an evidentiary hearing was held before an administrative law judge. At this hearing plaintiff was represented by counsel. Subsequently the administrative law judge decided that plaintiff was not "disabled" as that term is defined by the Social Security Act.* This decision was affirmed by the Appeals Council of the Social Security Administration.

Plaintiff thereafter sought judicial review in this Court. On November 29, 1976 the Court remanded the case to the Secretary for further proceedings. On January 10, 1978 a supplemental evidentiary hearing was held before an administrative law judge. At this hearing plaintiff was represented by counsel. In a written opinion dated January 30, 1978 the administrative law judge recommended that plaintiff be found not entitled to a period of disability or to disability insurance benefits under 42

---

* Within the meaning of the Social Security Act "disability" means

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). A person is under a disability

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). An impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

U.S.C. §§ 416(i) and 423. The recommended decision was adopted by the Appeals Council and now is the subject of this action for judicial review.

The record indicates that plaintiff was born on December 9, 1947. At the initial evidentiary hearing plaintiff testified that he stands 5 feet 7 inches tall and weighs 145 pounds. He is currently drawing a disability pension from the Veterans Administration for the service connected loss of his left leg above the knee which occurred in 1966 during Vietnam combat duty. Plaintiff also sustained a gunshot wound at the same time in his right foot.

Plaintiff received a high school education which included two years of woodworking. Following his discharge from the military he attended one year of technical school studying automotive sciences. In 1969 he began work for E. J. Korvette as an auto mechanic installing tires, batteries, shock absorbers, and mufflers. He worked steadily until December 11, 1973 when he injured his back on the job by lifting a tire from an automobile.

The medical reports in the administrative record begin with the report of plaintiff's hospitalization at the Veterans Administration Hospital from November 21 to November 27, 1972. He was admitted for abdominal pain and nausea. The physical examination was within normal limits and upper gastrointestinal series of x-rays failed to reveal any evidence of an ulcer. He was discharged in a markedly improved condition.

Plaintiff was again seen at the hospital on August 18, 1973 after being bitten by a dog two days earlier. His left arm was swollen and painful. He was treated, given a tetanus shot, and released the same day.

Plaintiff was next hospitalized from September 4 to September 8, 1973 with abdominal pain. Physical examination was largely negative. The laboratory studies were negative.

Plaintiff was seen at the Veterans Administration Hospital on December 13, 1973. He was described as very much depressed.

A physical examination was within normal limits and the report indicates he did not appear to be in any acute distress. There was no mention of any back injury. He improved significantly on anti-depressant drugs and was discharged on December 21, 1973.

On January 10, 1974 Dr. K. K. Hu, M.D., regional amputee clinic of the Veterans Administration Hospital, stated without supporting medical data that plaintiff is physically unable to perform his present job, that is, changing automobile tires and lifting heavy objects. Dr. Hu further said that plaintiff should avoid repeated bending and refrain from lifting objects weighing more than ten pounds.

In a letter dated February 25, 1975 to plaintiff's attorney Dr. Walter J. Johnson, M.D., a bone and joint specialist, reported on his examination of plaintiff on February 4, 1975. In this report Dr. Johnson recounted that plaintiff stated he had injured his back while at work on December 13, 1973 and that his back had become very painful and stiff. When Dr. Johnson examined plaintiff he complained of frequent pain in his lower back and numbness on the lateral side of the mid-thigh stump of the left leg. Plaintiff appeared to be a well-developed person who walked with a slight limp in the right leg, but was in no apparent distress. There was a slight deviation of the thoracic spine to the left. Deep pressure at L3, L4, L5, and S1 interspaces increased local pain and produced spasm in the deep and superficial paravertebral muscles. Back motion was adequate in all directions, although painful on the extreme. There was no radiation of pain to the hips or lower extremities. Straight leg raising was negative. Manipulation of the left mid-thigh stump revealed a good range of motion of the hip joints. It was Dr. Johnson's estimate that plaintiff was entitled to a 20% disability rating in his back.

Progress notes from the Veterans Administration Hospital for the period January 6, 1973 to April 29, 1975 indicated that in January 1973 plaintiff underwent tests to determine the cause of his stomach pain. A

barium enema was normal. In March 1975 plaintiff reported to the hospital with pain, stiffness, and swelling of the right knee. Plaintiff was prescribed pain medication.

On June 10, 1975 Dr. T. J. Fitzgerald, Ph.D., a clinical psychologist, evaluated plaintiff's employability. It was his opinion that plaintiff had no special skills, aptitudes or abilities that would be of benefit to him. Intellectually plaintiff is of average ability and his personality indicated depression with anxiety. Plaintiff also evidenced rigid and immature thinking. It was Dr. Fitzgerald's opinion that plaintiff is unemployable on the open and competitive market.

Plaintiff was examined by Dr. Lee T. Ford, M.D., on October 15, 1974. Dr. Ford reported that when plaintiff stands with his prosthesis he has slight limitation of back motion with some pain in the low back. Plaintiff can squat partially and arise using his good limb. Plaintiff also has an extensive defect on the medial portion of the right foot where there had been loss of skin and substance now replaced by a graft. Plaintiff's ankle motions were complete, although there is slight restriction of eversion. Plaintiff has good muscle power. Straight leg raising was negative. X-rays of the lumbosacral spine and pelvis indicated osteoporosis on the left side of the pelvis and a slight thinning of the left hip joint. The spine was negative in the lateral view and there was no disc narrowing. It was Dr. Ford's opinion that plaintiff sustained a sprain of the lumbosacral spine and, because of persistent and subjective symptoms, has five to ten percent residual permanent disability.

Veterans Administration Hospital program notes indicate that plaintiff received outpatient treatment on five occasions in 1975. He was given medication for pain and stiffness of the right knee. He experienced a discharge from a skin graft on his right foot which was treated. He complained of chest pain but x-rays revealed no active lung disease and no cardiomegaly.

Plaintiff was examined by Dr. Eugene R. Adelmann, M.D., a neurologist on November 11, 1977. Dr. Adelmann summarized his findings as follows:

this gentleman's neurological examination was unremarkable. He does have clinical findings of probably lumbrosacral strain, besides a right foot scar. Lumbosacral and right foot films were performed today which showed retention of multiple shrapnel fragments superimposing the soft tissue of the right foot. The lumbosacral spine, otherwise, was normal. I believe the retained shrapnel certainly could account for residual foot pain which . interferes with ambulation. Possibly, he might be able to handle sedentary-type employment which would involve mostly sitting. I don't believe he could handle any work which would involve prolonged standing or lifting, shoving, pulling, pushing, etc. He is, however, competent to handle his personal and financial affairs.

(Tr. 252–53). Dr. Adelmann also filled out a physical capacities evaluation report of plaintiff. He stated therein that during an eight hour work day plaintiff can sit for two hours, stand for one hour, and walk for one hour. Plaintiff can occasionally lift up to twenty pounds, but never lift over that amount. Plaintiff can occasionally carry up to twenty pounds, but never carry over twenty pounds. Plaintiff is able to use his hands for repetitive simple grasping, pushing and pulling, and fine manipulation. Plaintiff is able to use his right foot for repetitive movements as in operating foot controls. Plaintiff can occasionally bend; but never squat, crawl, climb. Plaintiff can frequently reach above shoulder level. Plaintiff should be totally restricted from unprotected heights; moderately restricted from being around moving machinery; moderately restricted from driving automotive equipment; but need not be restricted from exposure to changes in temperature and humidity or to dust, fumes, and gases.

Plaintiff was examined by Dr. Marshall B. Conrad, M.D., an orthopedic surgeon on November 28, 1977. He noted that plaintiff moved about the office with a satisfactory gait, although walking with a left-sided limp. There was no deformity in plaintiff's back but there was palpable muscle spasm

and tenderness over the lower lumbar spine. Motion in the lumbar spine was limited and plaintiff complained of pain upon motion. Dr. Conrad noted that there was a large healed soft tissue defect on plaintiff's right foot under the arch of the foot which is well covered with a split thickness skin graft. There was also a cyst in the middle of the graft which was tender. Plaintiff demonstrated a normal range of motion in the right ankle and right foot but complained of pain at the extremes of the motions. Straight leg raising on the right side was possible to a full ninety degrees without complaint of pain. Plaintiff's left leg amputation appeared well healed and without local problems. Previous x-rays of plaintiff's right foot indicated multiple metallic foreign bodies in the soft tissues. Dr. Conrad stated that he suspected that a portion of plaintiff's low back problems resulted from the abnormal gait which resulted from the amputation. However, he saw no reason for an alteration in the prosthesis. The right foot tenderness appeared normal and no surgery was indicated unless the cyst becomes larger. It was Dr. Conrad's opinion that plaintiff should be given further vocational training so that he can learn some type of trade not as physically demanding as that of an auto mechanic.

During the evidentiary hearing held on November 20, 1975 plaintiff testified that he is able to drive an automobile without restriction. He was able to stand for eight hours if permitted to move around. He has no trouble sitting, reaching, bending, or lifting up to ten pounds with either arm. He is able to walk one or two blocks without discomfort. Furthermore, he testified that he could engage in light type employment.

Plaintiff testified that he showers, dresses, and shaves himself. He does his own housekeeping. He had a garden and mowed the lawn with a self-propelled mower.

In January 1974 plaintiff enrolled in a junior college program for an associate degree in inhalation therapy. Throughout his period of study, until 1978, plaintiff carried a study load of twelve hours per semester. Twice each week he participates in a clinical program which requires that he be on his feet through most of the day. He has consistently driven himself to and from the school. Furthermore, plaintiff has belonged to an urban civic organization, attended twelve monthly meetings of the organization over the past year, and has put in two hours per week in the organization's program committee. Furthermore, in 1974 plaintiff held a part-time job with the school counseling other veterans.

Plaintiff testified that his lower back is painful. However, he wears no back brace. He further testified that he discontinued taking Tylenol tablets for pain. He had been taking two each day.

Upon examination by his counsel plaintiff testified that standing two or three hours, and walking a block or two, causes pain in his right leg. He had suffered pain in his right knee occasionally while working at E. J. Korvette. He testified that he has suffered knots and tightness in his stomach. He is able to climb steps only one at a time while holding on to the banister. He testified that he cannot put all of his weight on his right foot without pain. Sometimes driving his automobile causes pain in his right foot. Occasionally he needs help getting in and out of the automobile.

During the hearing held on January 10, 1978 plaintiff testified that he was still enrolled in the college respiratory therapy course. He still participates in the clinical training program twice a week for eight hours per day. He testified that when he walks he has pain in his right foot and back. On one occasion he wanted to go home from school but did not do so. Sometimes the pain in his back makes it difficult for him to concentrate. He stated that Dr. Adelmann's report is largely accurate as to his physical abilities to walk and to stand but he testified that he could not sit for two hours without getting up and walking around. Plaintiff testified that his pain has increased since the last evidentiary hearing. However, he has avoided taking the pain pills prescribed by the Veterans Administration Hospital. He testified that for the

last year and a half he has experienced pain in his foot when standing and moving around. He testified that he can still lift ten pounds and can walk two blocks without any problems. He does not regularly use a cane or crutch unless he has trouble with his leg.

Plaintiff testified that he has not performed home repairs for a year and a half because he has not felt up to it. He testified that if he performed cashier's duties his foot and back conditions would make him uncomfortable. Finally, he testified that he has not experienced abdominal pain for a while.

During the first evidentiary hearing Thomas Boyd, Ph.D., testified as a vocational expert. In response to the request of the administrative law judge Dr. Boyd summarized plaintiff's background, describing his work experience and other factors necessary to evaluate plaintiff's employment capacity. Dr. Boyd defined sedentary and light work as those definitions are found in the *Dictionary of Occupational Titles*. Dr. Boyd then assumed that plaintiff could perform sedentary and light work and stated that considering plaintiff's age, educational background, and training, plaintiff could perform the sedentary work of a file clerk, cashier, teller, posting clerk, sorting clerk, and inventory clerk. Dr. Boyd further stated that plaintiff could perform the light jobs of shipping and receiving clerk, retail sales clerk, service station attendant, parking lot attendant, tune-up or automobile inspection mechanic and motorcycle and small motor repair mechanic. These jobs existed in substantial numbers in the St. Louis metropolitan area where plaintiff resides. Under cross-examination by plaintiff's counsel Dr. Boyd agreed that almost all employers require an employee to undergo a physical examination.

During the supplemental evidentiary hearing Samuel Bernstein, Ph.D., testified as a vocational expert. He was asked to consider plaintiff's age, education, and work experience and to assume that plaintiff is capable of standing and moving around for fifteen to twenty minutes without pain and as long as an hour although with some discomfort. He was further asked to assume that plaintiff is able to sit in a padded chair for approximately an hour or two and could sit all day with the ability to get up and move around. Finally, he was asked to assume that plaintiff could lift ten pounds but cannot bend or stoop. Dr. Bernstein stated that plaintiff would not be capable of returning to his previous employment as an automobile mechanic at E. J. Korvette.

However, Dr. Bernstein stated that plaintiff could perform the sedentary work of posting clerk, inventory clerk, work order clerk, dispatcher, coding clerk, customer relations clerk, counselor, collection clerk, insurance clerk, billing control clerk, payroll clerk, and schedule clerk. These jobs existed in significant numbers in the St. Louis area. Under cross-examination Dr. Bernstein stated that, if plaintiff could not sit for more than two hours during an eight hour day, he could not perform the jobs he had listed.

In his decision of January 30, 1978 the administrative law judge made the following findings of fact:

1. The claimant met the special earnings requirements of the Act on December 13, 1973, the date he alleges he became disabled, and continued to meet them until December 31, 1976, but not thereafter.

2. The claimant is 30 years old, has completed sixteen years of formal education, and has been trained to work as an auto mechanic.

3. The claimant's impairments consist of the amputation of his left leg, lumbosacral strain, and pain attendant thereon.

4. The claimant's impairments are of minimal severity, have been so since December 13, 1973, and can be expected to cause the claimant some discomfort on extend[ed] walking and standing.

5. The claimant's description of his pain is not wholly credible and the allegation that such pain is so severe that it interferes with his capacity to

engage in substantial gainful activity is contradicted by other, objective evidence which compels a conclusion that the claimant's pain is not as severe as he describes it to be.

6. The claimant's allegation of disabling pain is not accompanied by an objectively demonstrable medical condition capable of producing such pain. Other evidence, such as the claimant's daily activities, the type and frequency of his medications, and his appearance, does not support a finding that the pain is disabling.

7. The claimant does not retain the residual functional capacity to return to his previous employment.

8. The claimant has the residual functional capacity to engage in such occupations as posting clerk, inventory clerk, dispatcher, coding clerk, customer relations clerk, insurance clerk, payroll clerk, and schedule clerk. Of the types of work that the claimant is capable of performing, some 10,000 exist in the area in which the claimant resides and exist in equally significant numbers in all areas of the economy.

9. The evidence fails to establish that the claimant's impairment has prevented him from engaging in any substantial gainful activity for any continuous period beginning on or after December 13, 1973, and which lasted or could be expected to last for twelve months or more.

10. The claimant was not under a disability, as defined in the Social Security Act, at any time on or after December 13, 1973.

(Tr. 203–4).

In the opinion of the Court the final decision of the Secretary denying disability insurance benefits to plaintiff is supported by substantial evidence and comports with the applicable rules of law. As the administrative law judge pointed out in his opinion plaintiff is able to attend college on a full time basis and has done so for several years. The ability to attend classes and to partici-pate on a regular basis in clinical instruction indicates an ability to perform at least sedentary activity in the clerical fields. According to plaintiff's own testimony he is able to sit for extended periods of time in a chair that is comfortable. He testified at one point that he is able to perform the duties of a cashier. Plaintiff argues the propriety of the administrative law judge's question as to whether if plaintiff were starving to death he would be able to perform the work of a cashier. Plaintiff answered "if I had to, I guess I would." (Tr. 235). The context indicates that the administrative law judge was comparing plaintiff's involvement in work in the clinical training program on an eight hour basis twice a week, which involved walking most of the time, with plaintiff's testimony that he could not perform a job where he could sit most of the time or as often as he wished. Plaintiff's answer was that he tolerated the pain associated with the clinical program because if he missed classes that would be noted on his school record. He further stated:

CLAIMANT: Well, I'm doing what I'm now because I've—like I say, I have to and I put up with some of the pain that I'm having. If I was being a cashier I guess I would just—I would just feel, you know, uncomfortable with those pains.

BY ADMINISTRATIVE LAW JUDGE:

Q. Well, are you telling me that if you had to work you could do that too—if that was at the point of where you were going to starve to death? If not, you couldn't handle cashier work?

A. I don't think I can handle the cashier—

Q. In other words, you would—you would starve to death—if you had no money coming in and a cashier's job was offered to you and no other help, you are going to starve to death—you could not do the cashier's work?

A. If I had to, I guess I would.

(Tr. 234–35). This line of questioning by the administrative law judge was an obvious response to the contradictory statements plaintiff made throughout the first

evidentiary hearing and the second evidentiary hearing where he indicated his ability to do the things that he wished to do which included substantial activity but also stated that he was unable to perform duties required of employment.

The administrative record in this case indicates that plaintiff does suffer from some degree of pain associated with his lower back and his lower extremities. However, the record overwhelmingly establishes, and the administrative law judge so found, that plaintiff's degree of pain is not disabling, that is, it does not render him incapable of performing substantial gainful activity as described by the vocational experts.

Therefore, the motion of the Secretary for summary judgment will be sustained. The motion of the plaintiff for summary judgment will be denied.